UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KYRA HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY STATE POLICE, *et al.*,<br><br>Defendants. | Docket No.: 18-cv-16358<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Krya Harrison ("Plaintiff") brings this action against the New Jersey State Police ("NJSP"), various State Troopers, and John Doe Defendants (collectively "Defendants"). Plaintiff alleges she was pulled over due to her race, assaulted, falsely arrested, and maliciously prosecuted for knowingly calling 9-1-1 without a purpose. The matter comes before the Court on Defendants' motion to dismiss. ECF No. [17] ("Mot."). For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**[1]

On November 22, 2016, Plaintiff (an African-American woman) was driving on Interstate 287 in Bridgewater Township, New Jersey. Compl. ¶ 16, ECF No. [1]. Plaintiff alleges that after she drove past NJSP Officer Rafael R. Castro ("Castro"), he pulled her over because "she was not supposed to pass him on the right and . . . he did not like the way she was wearing her seatbelt." *Id.* ¶ 19. Scared, Plaintiff "dialed 9-1-1 to request a sergeant for back up." *Id.* ¶ 21. According to the Complaint, Castro then questioned Plaintiff, asking: "why are you on your phone? Do you see me on my phone? Why are you on your phone?" *Id.* ¶ 22. Plaintiff can allegedly be heard on Castro's Mobile Video Recorder ("MVR") pleading: "I'm scared," "I'm extremely scared," and "I'm calling for help because I'm scared." *Id.* ¶ 24.

Plaintiff alleges that Castro then requested her driver's license and registration. *Id.* ¶ 26. But before Plaintiff could turn over the documents, Castro said he was arresting her for failing to give him her license, registration, and insurance card. *Id.* ¶¶ 26-27. According to the Complaint, Castro then grabbed Plaintiff and "dragged her from her car, slammed her to the ground, slammed her head to the concrete, stuck his knee in her back and handcuffed her," then dragged her across the ground to his patrol car. *Id.* ¶ 28. The

---

[1] The following facts, taken from the Complaint, are accepted as true for the purpose of this Opinion.

1

Complaint further alleges that while Plaintiff sat handcuffed and crying in the patrol car, Castro approached the vehicle, yanked her right arm, and screamed "shut the fuck up." *Id.* ¶ 29. Plaintiff was eventually transported to the hospital where she was examined for a head injury. *Id.* ¶ 34.

The same day Plaintiff was arrested, Castro signed a criminal complaint accusing her of making a 9-1-1 call without a lawful purpose, obstruction, and resisting arrest. *Id.* ¶ 36. Castro also issued thirteen motor vehicle summons to Plaintiff. *Id.* ¶ 38. Plaintiff further alleges that she was never read her *Miranda* Rights. *Id.* ¶ 39.

On November 23, 2016, Plaintiff returned to the hospital. *Id.* ¶ 40. "[S]he was diagnosed with a thoracic spine fracture, left shoulder sprain/strain and neck sprain/strain with the mechanism of injury noted to be blunt trauma, by physical assault." *Id.* ¶¶ 40-41.

On March 22, 2017, a Somerset County Grand Jury returned a one count indictment, charging Plaintiff with making a 9-1-1 call without a lawful purpose. *Id.* ¶ 42. Castro admitted to the Grand Jury that he heard Plaintiff tell the 9-1-1 operator, "I'm asking you for help because I am scared." *Id.* ¶ 43. On October 24, 2017, Plaintiff's motion to dismiss that indictment was granted. *Id.* ¶ 44. A different Somerset County Grand Jury re-indicted Plaintiff on the same charge in December 2017. *Id.* ¶ 45. In September 2018, Plaintiff was tried and acquitted of making a 9-1-1 call without a lawful purpose. *Id.* ¶ 53.

## II.     LEGAL STANDARD

A complaint survives a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the Plaintiff states a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts are required to accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). But when deciding a motion to dismiss, courts are not required to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    DISCUSSION

Plaintiff's Complaint alleges fourteen causes of action:

| Count | Claim |
|---|---|
| **Count 1** | Pattern and Practice Allegations (Governmental Liability) |
| **Count 2** | 42 U.S.C. § 1983 Unreasonable and Excessive Force |
| **Count 3** | Common Law Assault and Battery |
| **Count 4** | 42 U.S.C. § 1983 Unlawful and Unreasonable Search/Seizure/Detention |
| **Count 5** | Common Law and 42 U.S.C. § 1983 False Arrest |
| **Count 6** | 42 U.S.C. § 1983 Malicious Prosecution |
| **Count 7** | 42 U.S.C. § 1985 Conspiracy |
| **Count 8** | 42 U.S.C. § 1983 Supervisor Liability |

| | |
|---|---|
| **Count 9** | Negligent Hiring/Training/Retention/Supervision |
| **Count 10** | 42 U.S.C. §§ 1981 & 1983 Racial Discrimination |
| **Count 11** | 42 U.S.C. § 1985(3) Conspiracy with Racial Animus |
| **Count 12** | Violation of the New Jersey Civil Rights Act ("NJCRA") § 10:6–1-2 |
| **Count 13** | Negligent and Intentional Infliction of Emotional Distress |
| **Count 14** | Punitive Damages |

Defendants move to dismiss Counts One, Three, Eight, Nine, Ten, Eleven, and Thirteen of the Complaint. *See* Mot. at 5. In its opposition papers, Plaintiff partially abandons Counts One, Two, Four, Five, Six, Seven, Eight, Ten, Eleven, and Twelve of the Complaint. Pl.'s Opp'n Br. at 13, ECF No. [21] ("Opp.").

### A. Official Capacity Claims and Claims Against the NJSP under Sections 1981, 1983, 1985 and the NJCRA (Counts One, Two, Four, Five, Six, Seven, Eight, Ten, Eleven, and Twelve)

Defendants argue that the NJSP and the individually-named Defendants[2] sued in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983, and thus the claims against them in those capacities should be dismissed. In her opposition papers, Plaintiff "concedes all claims brought pursuant to 42 U.S.C. § 1983, § 1981, and § 1985 and the [NJCRA] against NJSP and the [Individual Defendants] in their official capacity[ies]." Opp. at 13. Therefore, Counts One, Five, and Six—as alleged against the NJSP and the Individual Defendants in their official capacities—are **DISMISSED WITH PREJUDICE**. To the extent Plaintiff intended to plead official-capacity claims in Counts Two, Four, Seven, Eight, Ten, Eleven, and Twelve, the official-capacity portions of those claims are also **DISMISSED WITH PREJUDICE**.

### B. Racial Discrimination – Equal Protection (Count Ten)

In Count Ten, Plaintiff alleges that Defendants violated Plaintiff's right to equal protection. Compl. ¶ 116. Defendants assert that there "is absolutely no evidence . . . to suggest that Defendants' actions were motivated by race" and argue Plaintiff merely pleads legal conclusions and sweeping allegations, not facts constituting a plausible claim. Mot. at 18.

To bring an equal protection claim, a plaintiff must allege that the defendants' conduct (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). To prove discriminatory effect,

---

[2] The individually named Defendants are State Troopers Rafael R. Castro, Nicholas R. Decesare, Jonathan Lopuski, Dana A. Wilcomes, Jeffrey Almeida, and John Does 1-10 (collectively, "Individual Defendants"). The only fact Plaintiff alleges regarding the Individual Defendants besides Castro is that they arrived at the scene after Trooper Castro pulled Plaintiff over on the highway. Compl. p. 15 ¶ 69.

a plaintiff must show (a) that she is a member of a protected class and (b) that she "was treated differently from similarly situated individuals in an unprotected class." *Id.* at 206 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001)). Disparate treatment "may be proven by naming similarly situated members of an unprotected class who were" treated differently "or, in some cases, by submitting statistical evidence of bias." *Bradley*, 299 F.3d at 206 (citing *Chavez*, 251 F.3d at 636). As to discriminatory purpose, Plaintiffs need only "allege enough facts to nudge the claim into the realm of plausible." *Major Tours*, 720 F. Supp. 2d at 606 (D.N.J. 2010). Where there is "no obvious nondiscriminatory explanation for the disparate treatment alleged," courts are more likely to find the discriminatory purpose prong satisfied. *Id.*

Here, other than Trooper Castro's alleged conduct, Plaintiff fails to plead any facts (as opposed to legal conclusions) that make out an equal protection claim. Compl. p. 15, ¶ 69. Therefore, the racial discrimination claims (Count Ten) against the Individual Defendants besides Castro are **DISMISSED WITHOUT PREJUDICE**.[3]

As to Trooper Castro, the Complaint sufficiently alleges a violation of Plaintiff's right to equal protection. To satisfy the discriminatory effect prong, Plaintiff alleges that (a) she is African American (i.e., a member of a protected class) and (b) other drivers who passed Trooper Castro were not pulled over and, contrary to Castro's statement, Plaintiff was wearing her seatbelt properly. Compl. ¶¶ 15, 19-20. While these allegations alone may be insufficient to find plausible disparate treatment (as the Complaint does not specify the race of the other drivers), Plaintiff also alleges NJSP officers have engaged in a pattern of unconstitutional discriminatory conduct. *See* Compl. pp. 18-20, ¶¶ 6-17. The Complaint details numerous cases where NJSP settled lawsuits brought by African American individuals for claims like Plaintiff's. *See id.* Combined with the allegations that other drivers were not pulled over and Trooper Castro's allegedly pre-textual reason for the stop (i.e., improper seatbelt wearing), this data is enough to find a plausible discriminatory effect.

As to discriminatory purpose, Plaintiff generally alleges Trooper Castro's conduct resulted from his bias. *See* Compl. ¶¶ 116-19. Defendants fail to present any *convincing*, nondiscriminatory explanation for Castro's alleged actions, *see generally* Opp., especially because the Court must accept as true the allegation that Plaintiff was wearing her seatbelt properly, Compl. ¶ 20. Accordingly, Plaintiff has sufficiently pled Trooper Castro's conduct was motivated by a discriminatory purpose. *See* FRCP 9(b) (permitting conditions of a person's mind to be alleged generally); *Major Tours*, 720 F. Supp. 2d at 606 (finding lack of non-discriminatory explanation relevant). As Plaintiff also sufficiently alleges Trooper Castro's conduct had a discriminatory effect, she has adequately pled a racial discrimination claim. Therefore, the motion to dismiss Count Ten as alleged against Castro in his unofficial capacity is **DENIED**.

---

[3] The official-capacity claims in Count Ten remain dismissed with prejudice. *See supra* Part III.A.

## C. Conspiracy with Racial Animus (Count Eleven)

Defendants move to dismiss the conspiracy claim (Count Eleven) on the grounds that Plaintiff pleads nothing more than sweeping legal conclusions. Mot. at 19.

A plaintiff asserting a Section 1985(3) conspiracy claim must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009).

Plaintiff fails to provide any factual basis to support the elements of a conspiracy claim. Instead, she only pleads legal conclusions. *See* Compl. ¶¶ 123-26 (alleging Defendants "conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to cover up the true nature of the incident . . . ."). The Complaint is devoid of any factual content that allows the Court to draw the reasonable inference that Defendants are liable for conspiracy. Therefore, Count Eleven is **DISMISSED WITHOUT PREJUDICE**, as the Court also cannot conclude amendment would be futile. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (listing reasons for denying leave to amend).

## D. Supervisor Liability (Count Eight)

Defendants argue that the supervisor claims against NJSP Superintendent Joseph Fuentes ("Fuentes") should be dismissed "because a § 1983 plaintiff cannot rely solely on a respondeat superior theory." Mot. at 13. Plaintiff responds that she is not relying on a respondeat superior theory but on "two viable theories of supervisor liability" approved by the Third Circuit: (1) "policy or custom" liability and (2) participation, direction, or knowledge and acquiescence liability. Opp. at 15 (citing *A.M. ex rel. J.M.K v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

In regard to "custom" liability, "a course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). For an individual to be liable for a municipal custom, he must have "established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d at 586.

Under the "knowledge and acquiescence" theory of liability, a plaintiff must allege "(1) both contemporaneous knowledge of the offending incident or knowledge of a prior

5

pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir. 1988)). "The Third Circuit has recognized that 'it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future.'" *Murphy v. Middlesex Cty.*, 361 F. Supp. 3d 376, 388 (D.N.J. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

Here, Plaintiff argues for "custom liability" based on NJSP's 1999, 2003, and 2014 settlements with minority individuals alleging similar misconduct to the allegations here. Compl. pp. 18-20, ¶¶ 6-17. Specifically, the 2003 suits brought by the ACLU on behalf of twelve individuals alleged racial profiling and excessive force claims. *Id.* ¶ 13. The State settled those suits by paying a total of $775,000. *Id.* These incidents potentially help establish that a custom was well-settled within the NJSP. *Id.* pp. 18-20, ¶¶ 6-17. However, Plaintiff has failed to plead any facts that Fuentes "established and maintained" that custom. *Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d at 586.

As noted above, for Plaintiff's "knowledge and acquiescence" claim to survive, she must allege that Fuentes (1) had knowledge of the incident or a prior pattern of similar incidents and (2) communicated a message of approval. *See Bonenberger*, 132 F.3d at 25. Plaintiff alleges a pattern of similar incidents (e.g., the lawsuits discussed above). However, there is no allegation that Fuentes had knowledge of this pattern. *See id.* (requiring knowledge). As to the specific incident at issue, Plaintiff alleges Fuentes was aware (element 1), but fails to allege any circumstances in which Fuentes' inaction could be found to communicate a message of approval (element 2). *See id.* Therefore, Count Eight is **DISMISSED WITHOUT PREJUDICE**, as Plaintiff may be able to add allegations regarding Fuentes's knowledge or acquiescence. *See Great W. Mining & Mineral Co.*, 615 F.3d at 174 (permitting leave to amend absent, *inter alia*, futility).[4]

### E. State Law Tort Claims (Counts Three, Nine, and Thirteen)

Defendants argue that Plaintiff's state law tort claims should be dismissed for failure to comply with the notice requirement of the New Jersey Tort Claims Act ("NJTCA"). Mot. at 11.

Under the NJTCA, plaintiffs must give notice to public-entity or public-official defendants within ninety days of their causes of action accruing. N.J.S. § 59:8-8. A failure to file a proper notice of claim is a ground for dismissal at the motion to dismiss stage. *Heslop v. New Jersey Dep't of Corr.*, 16-cv-4143, 2016 WL 4472957, at *4 (D.N.J. Aug. 24, 2016) (citing *William v. Westhampton Police Dep't*, No. L-1 144-13, 2014 WL 5393184, at *3 (N.J. Sup. Ct. App. Div. Oct. 24, 2014)). Plaintiffs must allege compliance with the notice provision in their complaints for courts to assume jurisdiction over state

---

[4] This does not disturb the ruling that the official capacity claims in Count Eight are dismissed with prejudice. *See supra* Part III.A.

law tort claims. *Bethea v. Roizman*, 11-cv-254, 2012 WL 2500592, at *7 (D.N.J. June 27, 2012).

Here, Plaintiff failed to allege that she filed a notice of claim. Accordingly, Plaintiff has failed to establish that this Court has jurisdiction over Plaintiff's state law tort claims. *See id.* Therefore, Plaintiff's state law claims (Counts Three, Nine, and Thirteen) are **DISMISSED WITHOUT PREJUDICE**. *See Great W. Mining & Mineral Co.*, 615 F.3d at 174 (generally permitting amendment absent futility).[5]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

Date: August 1, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[5] The NJCRA official capacity claims are still dismissed with prejudice. *See supra* Part III.A.