UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KYRA HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY STATE POLICE, *et al.*,<br><br>Defendants. | Civ. No. 2:18-CV-16358 (WJM)<br><br>OPINION |

### WILLIAM J. MARTINI, U.S.D.J.

Plaintiff Kyra Harrison ("Plaintiff" or "Harrison") brings this action against the New Jersey State Police ("NJSP"), State Trooper Rafael Castro ("Castro"), and State Trooper Joseph Fuentes ("Fuentes") (collectively "Defendants"). Plaintiff alleges she was pulled over due to her race, assaulted, falsely arrested, and maliciously prosecuted for knowingly calling 9-1-1 without a purpose. Before the Court is Defendants' motion for summary judgment (the "Motion") pursuant to Federal Rule of Civil Procedure 56. ECF No. 83. For the reasons set forth below, Defendants' motion is **GRANTED**.

### I.   BACKGROUND[1]

On November 22, 2016, Castro was on patrol when he observed a truck with a hazardous shifted load driving along Interstate 287 and initiated a traffic stop on the right side of the road. DSOMF ¶ 1. Castro instructed the driver to exit the highway and that he would escort him to the left-hand exit across the four-lane highway. *Id.* at ¶ 2. As Castro escorted the truck with emergency lights activated, Harrison, an African American woman, approached behind in her vehicle and crossed over the solid white line. *Id.* at ¶¶ 3-4; Am. Compl. ¶ 16, ECF No. 27. After Castro finished escorting the truck off the interstate, he pursued Harrison's vehicle, activated his lights, and initiated a traffic stop. DSOMF ¶ 6. Harrison made a complete stop in the left lane. *Id.* at ¶ 7. Castro maneuvered over to the right shoulder, made eye contact with Harrison, and signaled for her to merge over to the right shoulder. *Id.* at ¶ 11. Harrison looked at Castro, did not respond, and continued, which led Castro to maneuver

---

[1] The facts in this section are taken from the parties' statements of material facts and the exhibits attached thereto. Favorable inferences are given to the non-moving party. For ease of reference, the Court will use the following abbreviations to refer to documents in the record:
  "**DSOMF**" – Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 83-2)
  "**PSOMF**" – Plaintiff's Statement of Material Facts (ECF No. 89-1)
  "**PRDSOMF**" – Plaintiff's Response to Defendants' Statement of Material Facts (ECF No. 89-2)

behind Harrison again with his lights on. *Id.* at ¶ 12. Harrison pulled over onto the left grass median, but there was no space for Castro to pull in behind her causing him to stop in front of her vehicle. *Id.* at ¶¶ 13-14. Castro wore a state police uniform, which had a microphone attached to the shoulder, and was driving a marked state police vehicle equipped with a Digital In-Vehicle Recorder ("DIVR") directed to the front of the vehicle and a rear-facing camera for the back seat. *Id.* at ¶¶ 15-16. Once Castro approached the vehicle, he asked Harrison for her license and registration. Def. Ex. D, DIVR. Audio from the stop revealed Castro stated: "I had my lights on back there, I'm guiding that truck to the left lane. What you did, you went around the entire truck. . . you went around the truck after you see my lights on, siren on as well. It's all on video as well, ok. You disregarded my directions."[2] PRDSOMF ¶ 17. Castro asked Harrison for her driver's license, registration, and insurance. DSOMF ¶ 18. Harrison did not comply and subsequently requested the presence of a police sergeant. *Id.*; PRDSOMF ¶ 22. Castro allegedly stated, "I don't need to call my sergeant, I need to see your license and registration. . . I need to see who you are first." PRDSOMF ¶ 23. Harrison called 9-1-1 out of fear. *Id.* at ¶ 29; DSOMF ¶ 18. Once on the phone, Castro stated, "why are you on the phone? Am I on the phone?" Def. Ex. D, DIVR.

As Harrison is speaking to the 9-1-1 operator, Castro stated "I'm going to tell you one last time to give me your license, registration, and insurance." PRDSOMF ¶ 25. In total, Castro asked Harrison for her license and registration at least four times. Def. Ex. D, DIVR. Harrison did not comply and shortly after, Castro opened the driver-side front door in an effort to get her out of the vehicle. PRDSOMF ¶ 27. Harrison can be heard saying to the 9-1-1 operator "now he's opening my door, I'm scared. I'm extremely scared. I'm asking you for help because I'm scared." *Id.* at ¶ 28. Castro then stated, "you're under arrest for hindering, just so you know, because I already told you to give me your license and I explained to you why I pulled you over" *Id.* Harrison then attempted to give her credentials to Castro, who responded "you don't need to give it to me now. I already told you you're under arrest. I don't need to see it." *Id.* at ¶ 31. The two continued to argue and Castro repeatedly demanded that Harrison get out of the car, which she did not do. Def. Ex. D, DIVR. After at least ten commands to exit, Castro then forcibly removed Harrison from her vehicle, forced her to the ground, and handcuffed her behind her back. Def. Ex. D, DIVR, 10:32:25-10:36:29; DSOMF ¶ 28. Harrison can be heard screaming "Oh my God, help me, oh my God" repeatedly. PRDSOMF ¶ 37. Once handcuffed and on the floor, Harrison did not respond to Castro's commands to get up. Plaintiff alleges she lost consciousness and could not comply while Defendants claim she purposely went limp and refused to comply. *Id.* at ¶ 39; DSOMF ¶ 31. Plaintiff further alleges that Castro forced his knee into her back, causing spinal injury, and was then dragged from her vehicle to the back of Castro's patrol car. Plaintiff allegedly had a shoulder sprain, neck sprain, and thoracic spine fracture. Harrison Dep. 45:15-24. Although Plaintiff was noncompliant, Castro did not believe she was armed, threatening to flee, or threatening to do harm to him or herself.

---

[2] Defendants claim that Castro explained to Plaintiff that he pulled her over because she almost hit the truck and for a broken taillight. DSOMF ¶ 17. Although most of the interaction was recorded, the act of Harrison failing to yield to an emergency vehicle was notably not captured.

The investigation report stated that Harrison was charged with: (1) obstructing administration of law or other governmental function, (2) resisting arrest; eluding officer, and (3) false public alarms. Def. Ex. B, ECF No. 83. She was also issued 13 traffic related summons. *Id.* While in the back seat of Castro's patrol vehicle, Harrison began gagging, gasping, and screaming, stating she had a heart condition and could not breathe. DSOMF ¶ 35. Castro called emergency medical services and requested they meet him at the state police barracks because the location of the stop was not safe. *Id.* at ¶ 36. Later at the hospital, Harrison refused treatment and stated in her deposition that she would not have refused treatment if the hospital had a black doctor, and she were allowed to have that doctor treat her.[3] *Id.* at ¶ 38.

Harrison was later indicted by a Somerset County grand jury for making a 9-1-1 call without a purpose. *Id.* at ¶ 39. Following a jury trial, Harrison was acquitted. *Id.* A bench trial was later held on the 2 disorderly person offenses and the 13 motor vehicle offenses, where Harrison was found guilty of resisting arrest, obstruction, and 5 of the 13 motor vehicle offenses. *Id.* at ¶¶ 40-42. The trial court found that it was not a defense under the resisting arrest statute that the officer was acting unlawfully in making the arrest, provided that he announced his intention to arrest prior to the resistance. *Id.* at ¶ 43. The trial court found that Plaintiff grabbed her steering wheel, hindering Castro's ability to get her out of the vehicle. *Id.* at ¶ 44. Harrison appealed her conviction to the Appellate Division, which affirmed the decision of the trial court. Def. Ex. K.

## II. PROCEDURAL HISTORY

Plaintiff filed suit on November 21, 2018 and on August 1, 2019, this Court granted in part and denied in part Defendants' first motion to dismiss. ECF Nos. 1, 22. The Court gave Plaintiff leave to amend some, but not all, of her claims and Plaintiff subsequently filed an amended complaint on September 26, 2019. ECF Nos. 23, 27. This Court similarly granted in part and denied in part Defendants' second motion to dismiss. ECF Nos. 29, 34. Defendants filed this present motion for summary judgment for the remaining claims on August 5, 2022. ECF No. 83. The remaining counts are as follows: Count Two, Unreasonable and Excessive Force, 42 U.S.C. § 1983, against Castro; Count Three, Common Law Assault and Battery against Castro; Count Four, Unlawful and Unreasonable Search, Seizure, or Detention, 42 U.S.C. § 1983, against Castro; Count Five, Common Law and 42 U.S.C. § 1983, False Arrest against Castro; Count Six, Malicious Prosecution, 42 U.S.C. § 1983, against Castro; Count Eight, Supervisor Liability, 42 U.S.C. § 1983, against Fuentes; Count Nine, Negligent Training and Retention against Fuentes and NJSP; Count Ten, Racial Discrimination, 42 U.S.C. §§ 1981 & 1983, against Castro; Count Eleven, violation of the New Jersey Civil Rights Act ("NJCRA") § 10:6-1-2 against Castro; Count Twelve, Negligent and Intentional Infliction of Emotional Distress against Castro; and Count Thirteen for punitive damages.

---

[3] Plaintiff went to a different hospital the next day and was diagnosed with a shoulder sprain, neck sprain, and thoracic spine fracture. However, the record reflects minimal medical attention to this alleged diagnosis as well as any follow-up treatment Plaintiff may have received.

3

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court construes all facts and inferences in the light most favorable to the non-moving party. *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact—that is, the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-moving party must present actual evidence that creates a genuine issue for trial—reliance on unsupported assertions, speculation, or conclusory allegations is insufficient to defeat a motion for summary judgment. *Solomon v. Soc'y of Auto. Engineers*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex*, 477 U.S. at 324); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (non-moving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"). Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

### IV. DISCUSSION

#### A. Qualified Immunity

Defendants argue that summary judgment should be granted for Counts Two and Three because Castro acted reasonably. Qualified immunity under § 1983 and the NJCRA share the same standards. *See Faragalla v. Jersey City*, No. 17-03604, 2020 U.S. Dist. LEXIS 180330, 2020 WL 5812798, at *12 (D.N.J. Sept. 30, 2020); *see also Brown v. State*, 230 N.J. 84, 165 A.3d 735, 743 (N.J. 2017); *Morillo v. Torres*, 222 N.J. 104, 117 A.3d 1206, 1209 (N.J. 2015). Accordingly, the Court does not differentiate between these claims for purposes of the qualified immunity analysis. "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 416-17 (3d Cir. 2015)). The burden of establishing entitlement to qualified immunity rests with the movant asserting the defense. *Halsey v.*

4

*Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). "The qualified immunity inquiry contains two prongs: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021). An answer in the negative to either prong entitles an officer to qualified immunity. *See Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### i. Excessive Force

Our first inquiry on Castro's claim of qualified immunity is whether the facts Harrison asserts, taken in the light most favorable to her, show that Castro violated her Fourth Amendment rights. There is no dispute that Castro seized Harrison for Fourth Amendment purposes when he arrested her. The only question is whether Castro's use of force was objectively reasonable under the circumstances. At the summary judgment stage, once we identify the relevant facts and draw all inferences in the non-movant's favor, the reasonableness of an officer's actions is a pure question of law. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("At the summary judgment stage. . . once [the court] ha[s] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record. . . the reasonableness of [the officer's] actions. . . is a pure question of law.") The reasonableness of a seizure is assessed in light of the totality of the circumstances. *Id.* at 350. This question is analyzed from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396-97). While this inquiry is highly individualized and fact specific, the Supreme Court has provided three factors to guide us through it: (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene. *Graham*, 490 U.S. at 396; *see also Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (providing additional factors including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.")

Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the Court finds that Castro's use of force was reasonable under the circumstances and not excessive. Plaintiff did not comply with Castro's at least four requests to provide her license and registration as well as at least ten commands to exit the vehicle when told she was under arrest. Def. Ex. D, DIVR, 10:32:25-10:36:29. She was allegedly pulled out of her vehicle, thrown to the ground, lost consciousness, and handcuffed while on the ground. However, during Plaintiff's bench trial in state court for resisting arrest, the court found that Plaintiff grabbed her steering wheel, hindering Castro's ability to get her out of the vehicle. Plaintiff further alleges that Castro forced his knee into her back and was then dragged from her vehicle to the back of Castro's patrol car. Plaintiff denied treatment that day and went to a hospital the following day where she was diagnosed with a shoulder sprain, neck sprain, and thoracic spine fracture. Although Castro did not believe Plaintiff was armed, threatening to flee, or

5

threatening to do harm to him or herself, Castro was effecting an arrest on a noncompliant driver who refused to exit the vehicle after being warned several times that she was under arrest. The whole incident beginning when Castro removed Plaintiff from her vehicle and ending when he placed her in the patrol car lasted approximately a minute and a half. Similarly, the presence or absence of a physical injury, and the severity thereof, are but one relevant factor to consider in the Fourth Amendment excessive force analysis. *Sharrar v. Felsing*, 128 F.3d 810 (3d Cir. 1997); *Velius v. Twp. Of Hamilton*, 754 F. supp. 2d 689, 694 (D.N.J. 2010). A reasonable officer under the circumstances would have no choice but to use a level of force required to remove her and effect the arrest because "[w]ere it otherwise, police officers might have to rely on verbal instructions alone to effect an arrest for fear of section 1983 liability." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 809 (D.N.J. 2008). Therefore, Castro is entitled to qualified immunity and Defendants' motion for summary judgment with respect to Counts Two and Three is **GRANTED**.

### B. Lack of Evidence in the Record

#### i. Negligent Training or Retention

Defendants argue summary judgment should be granted on Count Nine against NJSP and Fuentes because Plaintiff has failed to show any evidence to support a claim for negligent training or retention. Plaintiff does not address this point in her briefings. With respect to negligent training, a plaintiff must show that "(1) the defendant owed a duty of care to the plaintiff to properly train its employees, (2) the defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 621 (D.N.J. 2012) (citing *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010). With respect to negligent retention, a plaintiff must show that "(1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 416 (2019). Plaintiff has not alleged sufficient facts to support such a claim. Beyond mere conclusory statements that Fuentes and NJSP were aware of Castro's alleged tampering with his recording device and Fuentes' alleged failure to intervene in Plaintiff's subsequent prosecution, Plaintiff failed to point to any evidence in the record that would demonstrate NJSP and Fuentes negligently trained or retained Castro. Plaintiff's amended complaint and briefings are void of any factual allegations regarding Castro's training and any duty owed to Plaintiff by Fuentes and NJSP. Defendants' motion for summary judgment with respect to Count Nine is **GRANTED**.

#### ii. Intentional or Negligent Infliction of Emotional Distress

Defendants argue summary judgment should be granted on Count Twelve, intentional or negligent infliction of emotional distress, for insufficient evidential support in the record of Plaintiff's severe emotional distress. Plaintiff disputes this and points to the motor vehicle

recording depicting Harrison's severe emotional distress in support of her claim.[4] Harrison also testified in her deposition that she was seeing a therapist on and off to help her mentally deal with the trauma she experienced. Harrison Dep. 48:25-49:12. To establish a claim for intentional infliction of emotional distress ("IIED"), Plaintiff has the burden of establishing that "defendants (1) acted intentionally or recklessly, and (2) outrageously and (3) proximately caused (4) severe distress." *G.D. v. Kenny*, 411 N.J. Super. 176, 194 (Super. Ct. App. Div. 2009). Similarly, with negligent infliction of emotional distress ("NIED"), Plaintiff has the burden of showing "(1) a duty of reasonable care was owed by the defendant to the plaintiff, (2) that duty was breached, (3) the plaintiff suffered severe emotional distress, and (4) the breach was a proximate cause of injury." *Id.* at 195 (internal citations omitted).

With respect to IIED, Plaintiff must prove that Castro's conduct was extreme and outrageous or, in other words, the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12, 19-20 (Super. Ct. App. Div. 2011). Despite Plaintiff's severe emotional distress, which is clear from the motor vehicle recording, Castro's conduct was not extreme, outrageous, or "utterly intolerable in a civilized community." *Id.* Therefore, Defendants' motion for summary judgment with respect to Plaintiff's claim for IIED is **GRANTED**.

Similarly, Plaintiff's claim for NEID will not survive summary judgment. Since Castro's conduct was reasonable under the totality of the circumstances, Plaintiff has failed to show that Castro breached his duty of reasonable care despite Plaintiff's strong emotional reaction. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's claim for NEID is **GRANTED**.

### iii. Supervisory Liability

To succeed on a supervisory liability claim under §1983, a plaintiff must: "identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Diorio v. Harry*, 2022 U.S. App. LEXIS 21130 at * 18 (3d Cir. 2022) (quoting *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Defendant argues that Count Eight should be dismissed because there is no competent evidence in the record to establish such a claim. Like the negligent training or retention claim in Count Nine, Plaintiff does not address this point in her briefings. In the amended complaint, Plaintiff makes conclusory allegations that Fuentes "was alerted to and made aware of numerous prior instances of similar misconduct. . . and either condoned, approved, and/or participated in the past practices and policy of exhibiting deliberate indifference to complaints of constitutional violations [ ]." Am. Compl. at 39. The only specific allegation is with respect Fuentes' knowledge of Castro's alleged tampering with

---

[4] Plaintiff cites caselaw for the proposition that an intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss. The present motion is one for *summary judgment*.

7

his recording device of the alleged unsafe lane change. *See Id.* Defendants correctly point out that the record is otherwise completely void of any evidence to sustain a claim of supervisory liability under § 1983, such as that Fuentes was aware of and indifferent to an unreasonable risk of injury and that Castro's allegedly unlawful conduct resulted from Fuentes' failings. As a result, Defendants' motion for summary judgment with respect to Count Eight is **GRANTED**.

### iv. Racial Discrimination

Defendants argue that Counts Ten and Eleven should be dismissed because Plaintiff failed to put forth any arguments in opposition to their motion for summary judgment. The Court agrees. The record is void of any legal arguments or factual inferences that would support a claim for racial discrimination under 42 U.S.C. §§ 1981 & 1983. Beyond conclusory allegations in the amended complaint, such as "[b]ecause of Plaintiff's race, Defendants. . . improperly racially profiled, targeted, falsely arrested, unlawfully imprisoned and maliciously prosecuted [Harrison]" and "Defendants displayed a clear racial bias, discriminatory conduct, and employed intimidating tactics against. . . [Harrison] which is evident in the manner she was racially profiled, unlawfully searched, seized, detained, arrested and maliciously prosecuted without reasonable suspicion or probable cause," Plaintiff has not set forth a plausible argument for racial discrimination. In fact, racial discrimination is not discussed or referenced in their motion papers. These conclusory statements are grossly insufficient to sustain a claim of racial discrimination under 42 U.S.C. §§ 1981 & 1983. Therefore, Defendants' motion for summary judgment on Counts Ten and Eleven is **GRANTED**.

### v. Malicious Prosecution

Defendants argue that Count Six should be dismissed because Plaintiff has failed to establish a claim for malicious prosecution. Under New Jersey law, malicious prosecution has four elements. Plaintiff "must establish that the defendant (1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff." *Tribal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001) (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1197 (3d Cir. 1993)). It is undisputed that Castro instituted proceedings against the Plaintiff for calling 9-1-1 without a purpose and that those proceedings terminated in favor of the Plaintiff. All that remains is whether the proceedings were instituted without probable cause and with legal malice.

Plaintiff's inability to show legal malice is fatal to her claim. The Third Circuit has defined legal malice as "either knowingly acting without probable cause – i.e., a reasonable belief – or primarily for a purpose other than securing the proper adjudication of the claim in which the proceedings are based." *Druz v. Noto*, 2010 U.S. Dist. LEXIS 53348, at *36 (D.N.J. May 28, 2010) (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1197 (3d Cir. 1993)). Although legal malice is not limited to the motives of hatred or ill will," Plaintiff must at least show that Defendant's conduct was reckless and oppressive in disregard of Plaintiff's rights. *See Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993). Plaintiff argues Castro acted with legal malice because he allegedly knew he lacked probable cause to charge her with false alarms but did so anyways. Plaintiff also conclusory asserts that Castro charged her for "a purpose other than securing the proper adjudication of the 911 charge," but does not allege

what that purpose was. Beyond the circular nature of Plaintiff's argument, it is also unsupported by the record. Castro was indisputably in a state trooper uniform and conducted his stop in a fully marked state trooper vehicle. Plaintiff has failed, and the record lacks evidence, to show that Castro acted with legal malice, therefore, Defendants' motion for summary judgment on Count Six is **GRANTED**.

### C. *Heck* Doctrine

Defendants argue that Counts Four and Five are barred by the *Heck* doctrine. In *Heck v. Humphrey*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." 512 U.S. 477, 486-87 (1994). The Third Circuit has repeatedly ruled that even though a plaintiff may have been found guilty of resisting arrest, the guilty verdict does not necessarily preclude an arrestee for recovering damages on a §1983 excessive force claim. *See Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008); *Garrison v. Porch*, 376 Fed. Appx. 274, 278 (3d Cir. 2010). Here, even if Castro were justified in using "substantial force" to arrest Harrison, it does not mean he was justified in using an "excessive amount of force." Harrison does not claim that her bench trial conviction of resisting arrest and obstruction is invalid, but rather that Castro effectuated a lawful arrest in an unlawful manner by using excessive force in violation of the Fourth Amendment. Defendants argue that Plaintiff's claims are based on a version of events inconsistent with her state court convictions and if Castro's use of force had been unreasonable then Plaintiff would have had the right to resist. However, in the context of excessive force, "law enforcement officers can effectuate a lawful arrest in an unlawful manner." *Suarez v. City of Bayonne*, 566 F. App'x 181, 185 (3d Cir. 2014) (internal alterations and quotation marks omitted); *see also Lora-Pena*, 529 F.3d 503, 505-506 ("We are not suggesting that [the plaintiff] will be able to recover damages, only that the rationale of *Heck* does not present an absolute bar to his [excessive force] claim."); *Hockaday v. N.J. Atty. General's Office*, 2016 U.S. Dist. LEXIS 157415, at *28-29 (D.N.J. Nov. 14, 2016) (holding that a finding of excessive force does not necessarily impugn the basis of a criminal defendant's prosecution or conviction). Nonetheless, since Castro acted reasonably and did not use excessive force under the totality of the circumstances Count Two does not survive. *See* supra IV, A.

Nonetheless, the *Heck* doctrine would preclude Plaintiff's claims for false arrest, unlawful and unreasonable search, seizure, or detention under Counts Four and Five. Plaintiff broadly alleges that she was unlawfully pulled over, searched, seized, and arrested without sufficient probable. These claims directly undermine Plaintiff's state conviction for obstruction and resisting arrest, where the state court held that Castro conducted a lawful traffic stop. Therefore, Defendants' motion for summary judgment on Counts Four and Five is **GRANTED**.

### D. Punitive Damages

For Count Thirteen, Plaintiff requests an award of punitive damages. Since none of Plaintiff's claims survive, Defendants' motion for summary judgment on Count Thirteen is **GRANTED**.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. An appropriate Order shall follow.

/s/ William J. Martini

WILLIAM J. MARTINI, U.S.D.J.

**Date: March 2, 2023**